UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED POOL DISTRUBITION, INC., <br><br>                  Plaintiff, <br><br> -against- <br><br> CUSTOM COURIER SOLUTIONS, INC., <br><br>                 Defendant. | ECF Case <br><br> Index No.: _____ <br><br> **COMPLAINT** |

Plaintiff United Pool Distribution, Inc. ("United Pool") for its Complaint against Defendant Custom Courier Solutions, Inc. ("CCS") alleges as follows:

## THE PARTIES

1.      Plaintiff United Pool Distribution, Inc. is a corporation formed under the laws of the State of Ohio with its principal place of business located at 3925 Jackpot Road, Grove City, Ohio.

2.      Defendant Custom Courier Solutions, Inc. is a corporation formed under the laws of the State of New York with its principal place of business located at 1600 Lexington Avenue, Suite 234, Rochester, New York.

## JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and the parties to the action are completely diverse, Plaintiff being a citizen of Ohio and Defendant being a citizen of New York.

4.      This Court also has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically the Defend Trade Secrets Act, 18 U.S.C. § 1836.

5.      This Court has supplemental jurisdiction over United Pool's state law claims under 28 U.S.C. § 1367(a), because those claims are so related to the claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, that they form part of the same case or controversy.

6.      This Court has personal jurisdiction over Defendant pursuant to New York Civil Practice & Law Rules § 301 (McKinney 2001).

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) & (2) because Defendant is a citizen of and thus resides in this judicial district and because a substantial part of the events giving rise to United Pool's claims occurred in this judicial district.

## STATEMENT OF FACTS

8.      United Pool is a non-asset-based third-party provider of road-based transportation and distribution services across the United States. United Pool does not haul product in its own semitrucks. Instead, United Pool intermediates between companies and individuals who own and operate semitrucks ("Agents") and companies in need of road transportation solutions ("Customers").

9.      In the course of consulting with an Agent on the preparation of a bid to a Customer, United Pool divulges its confidential, proprietary, and trade secret information (collectively, "Information") to that Agent, in order to prepare the most competitive bid. The Information includes United Pool's knowledge of its clients and their preferences – financial, economic, business, idiosyncrasies, historical – as well as ship volume data, pool parameters, and service requirements that are critical to a successful bid, as well as for the profitable operation of a Customer's contract.

10.     The Information is proprietary to United Pool and is not publicly available. It is the product of United Pool's decades of experience in the industry and cannot be duplicated or replicated except through decades of work in the industry. United Pool protects the secrecy and confidentiality of the Information by only disclosing it to Agents on a need-to-know basis and by requiring those Agents to agree to keep the Information confidential.

11.     Before divulging the Information, and in order to protect and ensure the secrecy of the Information, United Pool requires its Agents to agree to confidentiality, nondisclosure, and noncompetition terms as a prerequisite to that Agent partnering with United Pool on the bid.

12.     If the Agents with whom United Pool partnered were free to use United Pool's Information without restriction, then its Agents could use the Information to undermine United Pool's business opportunities and obviate United Pool's value proposition in the industry. United Pool therefore relies heavily on its Agents' promises of confidentiality, nondisclosure, and noncompetition in order to remain in business.

13.     One of United Pool's customers is Burlington Stores ("Burlington"), a national retailer.

14.     In connection with the preparation and submission of a bid to Burlington in early 2019, in which CCS was the proposed Agent, United Pool required that CCS agree to protect the confidentiality of the Information disclosed to it by United Pool. Further, United Pool also required that CCS agree not to service Burlington stores in Western New York except through its bid with United Pool.

15.     CCS agreed to protect the Information and that it would not compete by servicing Burlington stores in Western New York, except through its bid with United Pool.

16.    Based on that agreement, and in order to prepare the Burlington bid, United Pool disclosed Information to CCS.

17.    The Information disclosed to CCS in connection with the Burlington bid was and remains confidential and nonpublic.

18.    In February of 2019, United Pool submitted its bid to Burlington, with CCS as the Agent, to service stores in Western New York. The bid designated Rochester, New York as the pool point.

19.    Later that month, and consistent with the exclusive relationship between CCS and United Pool for the Western New York opportunity with Burlington, United Pool notified Burlington that it was foregoing its originally planned option for a Buffalo, NY pool point, in favor of the Rochester (CCS) option instead.

20.    In May of 2020, Mr. Lloyd Sprockett of United Pool emailed Mr. Chris MacKrell of CCS to confirm CCS's continued interest in partnering with United Pool on the potential Burlington opportunity.

21.    In an email twenty-seven minutes later, Mr. MacKrell responded that CCS remained "very interested in supporting Burlington," but disclosed that CCS was temporarily servicing Burlington in Western New York indirectly through an entity named Forward Air, in violation of CCS's agreement not to service Burlington in Western New York except through its bid with United Pool.

22.    United Pool was taken aback by Mr. MacKrell's disclosure that CCS had serviced Burlington in Western New York even while United Pool was bidding for that work with CCS as designated service agent. Because Agent loyalty is a cornerstone of United Pool's business model, Mr. Sprockett responded by reiterating the exclusivity requirement from CCS, writing: "[B]ased

upon our non-compete, you're going to have to decide if you are going to hook up with us exclusively for this specific potential opportunity or not."

23.    On June 1, 2020, at 11:33 a.m., Mr. Sprockett emailed to Mr. MacKrell a Delivery Agent Non-Disclosure/Non-Solicitation Agreement between United Pool and CCS. In the email attaching the draft document, Mr. Sprockett wrote:

> Please review the accompanying UPDI Non-Disclosure Agreement and, if you are in agreement with the terms, please return a signed copy. We will then start providing you with information in regard to the potential Burlington Stores opportunity in Western NY.

24.    CCS did not dispute Mr. Sprockett's exclusivity assertion and executed the Agreement without alteration on June 1, 2020. A copy of the Agreement is attached as Exhibit A to this Complaint.

25.    The Agreement generally prohibits, while it is in effect and for one year after its termination, CCS from soliciting United Pool's clients, entering into a direct relationship with United Pool's clients, transporting goods for or providing services to any United Pool client, and using United Pool's Confidential Information.

26.    After the Agreement was executed, and pursuant to it, United Pool disclosed confidential, proprietary, and trade secret information to CCS. The disclosed Information includes but is not limited to ship volume data as well as pool parameters and service requirements that United Pool has developed over the years.

27.    United Pool has devoted substantial time and resources over the years to develop these pool parameters and service requirements as they relate to Burlington, which are not generally known to the industry and which derive significant value from their being kept secret.

28.    Mr. Sprockett periodically reached out to CCS to confirm its intent to seek the Burlington opportunity solely with United Pool. On each occasion, and as recently as March of

2021, CCS reaffirmed its intent to stay exclusive with United Pool with respect to the Western New York Burlington business.

29.     In September of 2021, without notifying United Pool, CCS began directly servicing Burlington in breach of the Agreement. On information and belief, CCS used United Pool's Information in order to obtain Burlington's business.

30.     By taking the Western New York Burlington business for itself and by improperly exploiting United Pool's Information to obtain that business, CCS deprived United Pool of the opportunity to service Burlington in that region.

31.     On or about December 3, 2021, Mr. Sprockett emailed Mr. MacKrell with concerns that CCS may be hauling for Burlington in the Western New York market. Mr. MacKrell responded to that email by calling Mr. Sprockett directly. During that phone call, Mr. MacKrell admitted that CCS was making Burlington deliveries in the Western New York market, but offered various excuses for breaching the Agreement.

32.     Neither United Pool nor CCS has terminated the Agreement, thus it was still in effect and CCS's transporting goods for and/or providing services to Burlington violated, and continues to violate, the Agreement.

33.     On December 16, 2021, United Pool, through counsel, put CCS on notice of the breach and requested information and documents from CCS regarding the work CCS had performed for Burlington in breach of the Agreement. CCS, however, refused to provide any information or documents.

34.     On a February 4, 2022 telephone call, counsel for CCS denied that CCS was servicing Burlington, stating in no uncertain terms that, according to his client, CCS has done no business with Burlington since the end of 2019.

35.     That representation by CCS to its counsel was false and was made in an attempt to conceal CCS's wrongdoing from United Pool.

36.     In a letter dated February 17, 2022, CCS through counsel admitted that "CCS is and has been performing delivery services for Burlington directly beginning in September 2021."

37.     On March 10, 2022, CCS, though its counsel, represented to United Pool's counsel that CCS would stop servicing Burlington, writing: "CCS has decided to exit the retail pool distribution which includes Burlington. They will be out by the end of the month."

38.     That representation too was false. CCS continues to service Burlington in breach of the Agreement.

39.     The Burlington business that CCS has taken in breach of the Agreement is substantial and has damaged United Pool and/or unjustly enriched CCS in an amount not less than $1 million.

## COUNT I
### (Misappropriation of Trade Secrets under the Defend Trade Secrets Act)

40.     United Pool repeats and realleges each and every prior allegation contained herein.

41.     In breach of the Agreement and thus in breach of a duty to maintain the secrecy of United Pool's trade secrets, CCS used United Pool's Information to obtain the Burlington business.

42.     The Information that CCS misappropriated concerns and has been used in interstate commerce, specifically, the trucking of goods across state lines.

43.     As outlined above, the Information constitutes United Pool's trade secrets.

44.     United Pool has taken reasonable measures to keep the Information secret including, but not limited to, insisting on confidentiality from its Agents and executing agreements regarding same.

45.     United Pool has expended significant resources to develop and to protect the Information, which CCS misappropriated. That Information is not generally known to the public and derives value from not being publicly available.

46.     United Pool is entitled to preliminary and permanent injunctive relief prohibiting CCS from the possession, use, or disclosure of it. United Pool is entitled to monetary damages in an amount not less than $1,000,000. And United Pool is entitled to exemplary damages and to attorney's fees due to CCS's willful and malicious misappropriation of its trade secret information, in an amount to be determined at trial.

## COUNT II
**(Misappropriation of Trade Secrets under New York Common Law)**

47.     United Pool repeats and realleges each and every prior allegation contained herein.

48.     CCS used United Pool's Information in breach of the Agreement.

49.     As outlined above, the Information constitutes United Pool's trade secrets.

50.     The Information included nonpublic trade secret and confidential information that United Pool has diligently sought to protect from disclosure and that derives value from its secrecy.

51.     CCS used the Information despite its knowledge that it had a duty to keep it secret based on the parties' exclusive relationship and the Agreement.

52.     United Pool is entitled to, *inter alia*, preliminary and permanent injunctive relief prohibiting CCS's possession, use, or disclosure of United Pool's Information. United Pool is further entitled to monetary damages in an amount not less than $1,000,000.

## Count III
**(Misappropriation of Trade Secrets under the Ohio Uniform Trade Secrets Act)**

53.     United Pool repeats and realleges each and every prior allegation contained herein.

54.     The Information constitutes a trade secret.

55.     In breach of the Agreement and in breach of a duty to maintain the secrecy of the Information, CCS used the Information in order to obtain the Burlington business.

56.     CCS was not authorized to use the Information outside of CCS's relationship with United Pool.

57.     United Pool has expended significant resources to develop and to protect the Information CCS misappropriated. That trade secret information is not generally known to the public and derives value from not being publicly available.

58.     United Pool is entitled to preliminary and permanent injunctive relief prohibiting CCS from the possession, use, or disclosure of it. United Pool is further entitled to monetary damages in an amount not less than $1,000,000.

59.     United Pool is also entitled to punitive and exemplary damages and to attorney's fees due to CCS's willful and malicious misappropriation of its Information, in an amount to be determined at trial.

## COUNT IV
### (Breach of Contract)

60.     United Pool repeats and realleges each and every prior allegation contained herein.

61.     The Agreement is a binding contract between CCS and United Pool.

62.     Pursuant to the Agreement, United Pool pursued the Burlington opportunity and, further, disclosed Information to CCS.

63.     United Pool satisfied its obligations under the Agreement.

64.     CCS breached the Agreement when it began hauling for Burlington in September of 2021. Because CCS continues to haul for Burlington, CCS remains in breach of the Agreement.

65.     CCS also breached the Agreement when it used United Pool's information to obtain the Burlington business outside of its relationship with United Pool.

66.     United Pool has been damaged by CCS's breaches of the Agreement in an amount not less than $1,000,000.

## COUNT V
### (Unfair Competition)

67.     United Pool repeats and realleges each and every prior allegation contained herein.

68.     The Information United Pool disclosed to CCS is United Pool's proprietary trade secret information.

69.     CCS obtained the Information based on its assurances of its intent to work exclusively with United Pool with regard to Burlington.

70.     CCS misappropriated the Information when it used the Information to work directly with Burlington.

71.     CCS used the Information to its commercial advantage.

72.     CCS's misappropriation and use of the Information was in bad faith

73.     CCS thereafter acted in bad faith when, through counsel, it made repeated misrepresentations about the nature of its relationship with Burlington, all in an attempt to deceive United Pool and to continue to benefit from its wrongful acts.

74.     United Pool has been damaged by CCS's acts of unfair competition in an amount not less than $1,000,000.

## COUNT VI
### (Unjust Enrichment)

75.     United Pool repeats and realleges each and every prior allegation contained herein.

76.     The Information constitutes a benefit that United Pool conferred upon CCS.

77.     By using this Information to obtain work with Burlington separate from CCS's exclusive relationship with United Pool, CCS benefited from that Information without providing any corresponding benefit to United Pool.

78.     Because it would be against equity and good conscience to permit CCS to retain those benefits, United Pool is entitled to damages in an amount not less than $1,000,000.

## COUNT VII
### (Tortious Interference with Prospective Business Relationship)

79.     United Pool repeats and realleges each and every prior allegation contained herein.

80.     CCS was aware of United Pool's relationship with Burlington.

81.     CCS was aware of United Pool's continued efforts to secure Burlington's Western New York business.

82.     CCS intentionally interfered with those efforts by obtaining the Western New York Burlington business, and did so through use of United Pool's Information.

83.     CCS's unilateral use of the Information was wrongful.

84.     CCS has injured the business relationship between United Pool and Burlington.

85.     CCS thereby deprived United Pool of the potential business opportunity and damaged United Pool in an amount not less than $1,000,000.

## PRAYER FOR RELIEF

WHEREFORE, United Pool prays that judgment be entered in its favor and against CCS and prays for the following relief:

(a) For Count I, monetary damages in an amount not less than $1,000,000, plus exemplary damages and attorney's fees, in an amount to be determined at trial.

(b) For Count II, a preliminary and permanent injunction against CCS prohibiting CCS's possession, use, or disclosure of United Pool's trade secret and confidential information, plus an award of monetary damages in an amount not less than $1,000,000.

(c) For Count III, monetary damages in an amount not less than $1,000,000, plus exemplary damages and attorney's fees, in an amount to be determined at trial.

(d) For Count IV, damages in an amount not less than $1,000,000.

(e) For Count V, damages in an amount not less than $1,000,000.

(f) For count VI, damages in an amount not less than $1,000,000.

(g) For count VII, damages in an amount not less than $1,000,000

(h) Such other and further relief as the Court may deem just and proper.


Dated: New York, New York                      Respectfully submitted,
        July 22, 2022

                                               BAKER & HOSTETLER LLP


                                               By:    *s/ Robyn M. Feldstein*
Nicholas M. Rose                                      Robyn M. Feldstein
(*pro hac vice* application forthcoming)              rfeldstein@bakerlaw.com
Email: nrose@bakerlaw.com                             45 Rockefeller Plaza
45 Rockefeller Plaza, 14th Floor                      New York, NY  10111
New York, New York 10111                              Telephone:   212.589.4200
Telephone: 212.589.4200                               Facsimile:    212.589.4201
Facsimile: 212.589.4201

                                               *Attorneys for Plaintiff United Pool Distribution,*
                                               *Inc.*