UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

United Pool Distribution, Inc.,

                                            Plaintiff,

                                            Case # 22-CV-6314-FPG

v.

                                            DECISION AND ORDER

Custom Courier Solutions, Inc.,

                                            Defendant.
_____

On June 25, 2024, the Court granted Plaintiff United Pool Distribution, Inc.'s motion for partial summary judgment. ECF No. 72. The Court concluded that United Pool had established, as a matter of law, that Defendant Custom Courier Solutions, Inc. had breached the parties' nondisclosure and nonsolicitation agreement by (1) soliciting Burlington Coat Factory's business, and (2) servicing Burlington's business. *Id.* at 14-15; *see also* ECF No. 51-3 at 56 (copy of agreement). Still pending before the Court is Defendant's cross-motion for summary judgment on Plaintiff's other claims.[1] ECF No. 53. For the reasons that follow, Defendant's motion is GRANTED to the extent set forth below.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the

---

[1] In its amended complaint, Plaintiff brought eight claims: misappropriation of trade secrets under federal law; misappropriation of trade secrets under New York law; misappropriation of ideas under New York law; misappropriation of trade secrets under Ohio law; breach of contract; unfair competition; unjust enrichment; and tortious interference with prospective business relationship. *See generally* ECF No. 38.

1

non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## DISCUSSION

Defendant's cross-motion can be resolved in short order. The Court begins with Plaintiff's claims for misappropriation of trade secrets.

Plaintiff alleges that Defendant misappropriated its trade secrets, in violation of New York, Ohio, and federal law, by using the trade secrets to retain "Burlington's business in 2023." ECF No. 58 at 26; *see also* ECF No. 38 at 8-12. Defendant argues that this claim fails because, *inter alia*, there is no evidence that, in fact, it "improperly use[d] . . . any information provided to it by [Plaintiff]." ECF No. 53-14 at 19. The Court agrees with Defendant.

Whether arising under New York, Ohio, or federal law, a misappropriation claim can be premised on a defendant's unauthorized use of another's trade secret. *See Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (New York law); 21 U.S.C. § 1839(5)(B) (federal law); Ohio Rev. Code § 1333.61(B)(2) (Ohio law). In this context, "use" is understood broadly to mean "*any* exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *Restatement (Third) of Unfair Competition* § 40 cmt. c (emphasis added). This includes "marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade

secret." *Id.*; *see also Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021) ("[T]he 'use' of a trade secret encompasses all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose.").

Here, even construing the facts in the light most favorable to Plaintiff, a reasonable factfinder could not find unauthorized use by Defendant. This conclusion flows from the decidedly limited scope of the trade secret.

In February 2019, Lloyd Sprockett—Plaintiff's president—reached out to Chris Mackrell—Defendant's president and C.O.O.—"regarding a potential opportunity with Burlington [Coat Factory] for pool distribution services in Western New York." ECF No. 59 ¶ 20. In connection with the potential joint bid, Sprockett disclosed various information to Defendant by way of email on February 22, 2019. *See* ECF No. 53-6. Included in the email were several attached documents related to Burlington's needs, which were prepared by Burlington. *See id.*; Sprockett Dep. 70:2-11. In the body of the email, Sprockett also provided his own "insights" related to the work and bid. *See* ECF No. 53-6. It is undisputed that all of this information was disclosed without any confidentiality agreement in place, and without any other express limitation on its disclosure or use.[2] *See* Sprockett Dep. 74:24-76:24. Moreover, neither the Burlington documents nor Sprockett's "insights" were identified as confidential. Sprockett Dep. 75:11-15; ECF No. 53-6.

---

[2] In its opposing Rule 56 statement, Plaintiff purports to "dispute" this fact. *See* ECF No. 59 ¶ 26. However, Plaintiff did not "cit[e] to admissible evidence" to show that the Sprockett's email *in February 2019* was sent under an expectation of confidentiality, as the Local Rules require. Loc. R. Civ. 56(a)(2). Instead, Plaintiff makes the entirely distinct claim that a confidentiality agreement was in place *in June 2020*. *See* ECF No. 59 ¶ 26. The June 2020 agreement does not claim to be retroactive in effect, and Plaintiff does not argue otherwise. *See* ECF No. 1-1 at 2 (stating that, "[f]rom time to time *during the term of this Agreement*, United Pool may disclose information" that Defendant must keep confidential (emphasis added)). Because Plaintiff has not "specifically controverted" Defendant's assertion, it is "deemed admitted." Loc. R. 56(a)(2).

3

The parties' 2019 bid was unsuccessful. Sprockett Dep. 90:10-13; ECF No. 53-1 ¶ 12. In May 2020, Sprockett again reached out to see if Defendant "would [] be interested in revisiting the Burlington pool business." Ayer Dep. Ex. 7. Unlike the February 2019 bid, with respect to this opportunity, Sprockett asked Defendant to execute a non-competition/confidentiality agreement. After some negotiation, the parties executed the agreement in early June 2020. *See id.*; ECF No. 1-1. With respect to confidentiality, the agreement provides:

> From time to time during the term of this Agreement, United Pool may disclose information to Carrier about its business, trade secrets, third party confidential information, and other proprietary information (collectively, "**Confidential Information**"). . . . The Carrier shall keep the Confidential Information confidential, not disclose it to any third party, and shall safeguard the Confidential Information with the same degree of care as Carrier would protect its own information, which shall be at least a commercially reasonable degree of care. . . . The Carrier shall not use or disclose the Confidential Information for any purpose other than as necessary to exercise its rights and complete its responsibilities under this Agreement.

ECF No. 1-1 at 2.

Viewing the evidence in the light most favorable to Plaintiff, Sprockett thereafter sent Defendant some additional information related to the bid. This information consisted of minor updates to the prior year's bid proposal—which, as just noted, was nonconfidential. *See* Sprockett Dep. 140:2-13; Ayer Dep. 47:16-48:12, 51:17-52:20. Specifically, Plaintiff provided its own forecasts for what Burlington's current needs might be since the 2019 bid, and offered alternative pricing as a result. *See* Sprockett Dep. 141:6-143:15; Ayer Dep. 47:20-48:6, 51:17-52:20. This is the information that Plaintiff identifies as its trade secret. *See* ECF No. 58 at 10, 23; ECF No. 59 ¶ 54.

In its opposition materials, Plaintiff does not offer direct evidence that Defendant ever used or disclosed the 2020 updates in a manner violative of its confidentiality obligations. Instead, Plaintiff contends that it may rely on circumstantial evidence to prove impermissible use. *See* ECF

4

No. 58 at 25-26. That is true, of course. *See, e.g.*, *Xavian Ins. Co. v. Boeing Cap. Corp.*, No. 18-C-6222, 2019 WL 4750105, at *5 (N.D. Ill. Sept. 30, 2019) ("[C]ourts have recognized that circumstantial evidence is acceptable, indeed even expected, in trade secret misappropriation cases."); *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 512 (S.D.N.Y. 2017) ("[I]t is well recognized [in trade-secret misappropriation cases] that misuse can rarely be proved by convincing direct evidence and that defendants' witnesses will often directly deny everything" (internal quotation marks omitted)). But a circumstantial-evidence approach still depends on a plausible underlying theory of misuse. For example, if a defendant has access to another's trade-secret technology and proceeds to undertake "implausibly fact development" of a similar technology, impermissible use of the trade secret may be inferred circumstantially. *OmniProphis Corp. v. Vanteon Corp.*, No. 23-CV-6617, 2024 WL 3443900, at *3 (W.D.N.Y. July 17, 2024).

By contrast, Plaintiff offers a highly speculative theory of misuse. There is evidence that in mid-2022, after Defendant had independently begun a business relationship with Burlington, Defendant and Burlington's relationship soured because of, among other things, Defendant's unilateral decision to move its facility. *See* Ayer Dep. Ex. 13. Plaintiff posits that, during this time, Defendant used Plaintiff's 2020 updates to "retain Burlington's business." ECF No. 58 at 26. Plaintiff fails to articulate *how* its two-year-old updates to a three-year-old, nonconfidential bid proposal could have been used by Defendant to repair its relationship with Burlington in mid-2022. As a general matter, stale or obsolete information of this sort cannot even "form the basis for a trade secret claim," as it "has no economic value." *Presidio, Inc. v. People Driven Tech., Inc.*, 686 F. Supp. 3d 652, 684 (S.D. Ohio 2023) (internal quotation marks omitted). But even assuming the 2020 updates retained some value, Plaintiff fails to supply any plausible connection between the updates and Defendant's ability to keep Burlington's business in 2023. Without that,

5

a reasonable jury could not find misappropriation circumstantially. *Cf. Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-CV-2450, 2023 WL 3919469, at *16 (N.D. Cal. June 9, 2023) (evidence that former employee of plaintiff made "calls and data requests" around the time of his move to defendant company did not supply circumstantial evidence of misappropriation, where the calls and requests did not relate to the trade secret and so were "irrelevant even circumstantially to show that [the employee] somehow knew of or used [the plaintiff's] secrets").

Accordingly, the Court agrees with Defendant that Plaintiff has failed to offer sufficient evidence to prove impermissible use of a trade secret. Therefore, Defendant is entitled to summary judgment on Plaintiff's trade-secret misappropriation claims.[3]

In light of this conclusion, Plaintiff's claims for misappropriation of ideas (Count III), unfair competition (Count VI), and tortious interference with prospective business relationship (Count VIII) fail as a matter of law. *See Wexler v. Hasbro, Inc.*, No. 20-CV-1100, 2022 WL 743431, at *4 (S.D.N.Y. Mar. 11, 2022) (stating that, to prove "misappropriation of ideas" under New York law, a "plaintiff must prove that his "ideas were actually used by the defendant"); *Pauwels v. Deloitte LLP*, 83 F.4th 171, 187 (2d Cir. 2023) ("[I]f a plaintiff cannot adequately allege that a defendant misappropriated the plaintiff's property or trade secret, the plaintiff cannot state a claim for either unfair competition or trade secret misappropriation."); *Insight Global LLC v. Wenzel*, No. 17-CV-8323, 2018 WL 11318728, at *3-5 (S.D.N.Y. Aug. 27, 2018) (stating that, to prove "tortious interference with business relations under New York law, a plaintiff must

---

[3] In the alternative, Plaintiff suggests that Defendant's mere retention of its 2020 updates constitutes misappropriation. *See* ECF No. 58 at 25. Plaintiff fails to explain how Defendant's mere retention of the information that Plaintiff voluntarily provided was improper, however. Nothing in the parties' agreement required Defendant to return or delete the 2020 updates at any particular time. The Court bears no responsibility to further develop this argument on Plaintiff's behalf. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

demonstrate that . . . the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means," which may be established by a defendant's "misappropriation of trade secrets"). Although the Court granted summary judgment in Plaintiff's favor on the claim for breach of the nonsolicitation provisions of the parties' agreement, *see* ECF No. 72, Defendant is entitled to summary judgment on any breach of contract claim premised on its alleged use or disclosure of Plaintiff's confidential information. *See, e.g.*, ECF No. 38 ¶ 89. Finally, Plaintiff's claim for unjust enrichment, insofar as it is based on Defendant's alleged retention, use, and disclosure of the 2020 updates, *see id.* ¶ 103, is duplicative of Plaintiff's contract and tort claims, *see TileBar v. Glazzio Tiles*, No. 22-CV-3823, 2024 WL 1186567, at *25 (E.D.N.Y. Mar. 15, 2024), and therefore must be dismissed as well.

## CONCLUSION

For the reasons discussed above, Defendant's cross-motion for summary judgment (ECF No. 53) is GRANTED to the extent that it is entitled to judgment as a matter of law on Plaintiff's claims for misappropriation of trade secrets; misappropriation of ideas; breach of contract premised on Defendant's alleged disclosure or use of confidential information; unfair competition; unjust enrichment; and tortious interference with prospective business relationship. Per the Court's June 25, 2024 Decision & Order, the only surviving claim is breach of contract premised on the nonsolicitation provisions of the agreement. A status conference to hear from the parties on the progress of this action is set for September 5, 2024 at 2:30 P.M.

IT IS SO ORDERED.

Dated: July 31, 2024
      Rochester, New York

                                                 HON. FRANK P. GERACI, JR.
                                                 United States District Judge
                                                 Western District of New York